IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GARY WALL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:21cv00052 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MARK E. ENGELKE, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Gary Wall, a Virginia inmate proceeding *pro se*, filed this civil rights action under 42 U.S.C. § 1983, alleging that the defendants violated his religious rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), as well as his equal protection rights under the Fourteenth Amendment, by denying him access to a diet that meets the dietary requirements of his religious beliefs. The defendants filed a motion to dismiss asking the court to dismiss some of Wall's claims for relief under Federal Rule of Civil Procedure 12(b)(6) because some of the relief he seeks is not available in this action. Having reviewed the pleadings, the court finds that the defendants' motion is improper, and that Wall has stated plausible claims for relief. The court, therefore, will deny the defendants' motion.

**I.**

Wall alleges that he has "been a recognized sincere adherent of the Nation of Islam [("NOI")]. . . since 2009" and that the NOI is a "recognized religious sect within the Virginia Department of Corrections [("VDOC")]." (Compl. at 2 [ECF No. 1].) Wall states that adherents to the NOI follow a "kosher or halal diet," and that it is "clearly established in []

Fourth Circuit case law that the initial common fare diet provided in the [VDOC] me[]t the dietary requirements for a variety of religions like Jewish and Muslim observers." (*Id.*) Wall claims that, "[l]ike Jews and Muslims, members of the [NOI] also observe dietary restrictions such as refraining from eating pork or pork by[-]products" and not eating "scavenger animals, such as crabs or catfish." (*Id.*) Wall states that a "kosher or halal diet generally confirms to [NOI members'] dietary structures." (*Id.*) Wall also alleges that NOI observers "should refrain from eating other [foods such] as sweet potatoes, kale, lima beans, and turnips[,] etc.[,] but this has only been observed during the month of Ramadan's month of fasting . . . [in disregard of] the available teachings from "How to Eat to Live," for an [NOI] observer all year round." (*Id.*) Wall argues that "[a]s early as June 20[,] 2019, the now available common fare diet meal ha[d] become so bastardized and adulterated that it no longer met the [NOI] (nor the Orthodox Jewish) dietary laws, teachings, or standards as it once did. . . ." (*Id.*)

Wall explains that as of May 1, 2019, the VDOC began providing "a kosher prepackaged meal available to the Orthodox Jewish religious sect, identical to the initial common fare diet that was provided when [Wall] initially requested a kosher diet in 2009. . . ." (*Id.*) He states that "[o]n or about October 10[,] 2019, [he] initially requested a kosher diet while housed at [Sussex I State Prison] on a medical transfer" and indicated that the request was "for health and religious purposes . . . because of the current changes to the common fare diet including (serving) several items [he] should not be eating according to [his] religious beliefs." (*Id.* at 3.) Wall's request for the diet was denied on January 17, 2020, by the Director of Food Service, Mark Engelke. Wall states that he filed administrative grievances and appeals, but the decision to deny him the diet was upheld at all levels of review.

Upon his return to Red Onion State Prison ("Red Onion") on March 6, 2020, Wall claims that during intake he was "informed by [his] counselor [that] she ha[d] never seen the Director of Food Service approve a kosher diet request to an offender observing any Muslim religion." (*Id.* at 3-4.) Wall alleges that the counselor also informed him that when she contacted the chaplain, he said that Wall "'could not participate in the up-coming Ramadan if [he] start[ed] receiving a kosher diet and [that Wall] need[ed] to pick one.'" (*Id.* at 4.) Wall alleges that this was later "reaffirmed" by the chaplain in response to a request form. (*Id.*) Wall argues that his religious beliefs have been "substantially burdened" by having to choose "between observing [his NOI] religion or receiving a 'voluntary' meal consistent with [his] recognized religious scruples and teachings." (*Id.*) Wall also argues that, to his knowledge, no other Red Onion inmate who observes "any other Islamic religion" has "been approved for th[e] available kosher diet without having to denounce their Islamic religious affiliation first." (*Id.*) As further evidence that the denial of his request for the kosher diet was based on his religion, Wall states that when he subsequently changed his religious affiliation "to a Jewish sect," he "was immediately approved" for the kosher diet on October 9, 2020. (*Id.*)

Wall contends that the defendants have violated his religious rights under the First Amendment and RLUIPA, as well as his equal protection rights under the Fourteenth Amendment.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th

Cir. 1978); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples

requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City

of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that

state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D.

Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

## III.

Wall alleges that the defendants denied his federal religious and equal protection rights

by denying him a particular religious diet and asks the court for declaratory and injunctive

relief as well as damages. The defendants filed a motion to dismiss arguing that the court has

no authority to grant Wall's requests for damages against the defendants in their official

capacities and under RLUIPA.[1] Because a motion under Rule 12(b)(6) is not the proper vehicle

to challenge a prayer for relief, the court will deny the motion to dismiss.

Although federal courts lack authority to award damages against defendants in their

official capacities or under RLUIPA,[2] "a demand for relief is not part of a plaintiff's statement

of the claim." *Alexander v. Se. Wholesale Corp.*, 978 F. Supp.2d 615, 624 n. 7 (E.D. Va.

2013) (citing *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002)). "[A] plain reading of Rule

12(b)(6) indicates that the rule may be used only to dismiss a 'claim' in its entirety." *Janis v.

Nelson,* No. CR. 09–5019–KES, 2009 WL 4505935, at *7 (D.S.D. Nov. 24, 2009) (citations

---

[1] The court notes that the defendants have not argued that Wall's allegations are *factually* insufficient to state a cognizable § 1983 claim.

[2] These propositions are well settled. *See, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Wall v. Wade*, 741 F.3d 492, 496 n.5 (4th Cir. 2014) ("Congress did not authorize damages claims against state officials under RLUIPA.")

omitted); Fed. R. Civ. P. 12(b)(6) (permitting party to raise the defense of "failure to state a claim upon which relief can be granted" by motion). Because a demand for relief is not part of a plaintiff's statement of the claim, "the nature of the relief included in the demand for judgment is immaterial to the question of whether a complaint adequately states a claim upon which relief can be granted." *Charles v. Front Royal Volunteer Fire & Rescue Dep't*, 21 F. Supp. 3d 620, 629 (W.D. Va. 2014); *see also Schmidt v. C.R. Bard, Inc.*, No. 6:14-CV-62, 2014 WL 5149175, at *8 (S.D. Ga. Oct. 14, 2014); *Int'l Fid. Ins. Co. v. Mahogany, Inc.*, No. CIV. JKB–11–1708, 2011 WL 3055251, at *2 n. 1 (D. Md. June 25, 2011) ("The sufficiency of a complaint is determined by the plaintiff's statement of his claim for relief, of which the demand for judgment forms no part." (citing Charles Alan Wright, *et al.*, 5 *Federal Practice and Procedure* § 1255 (3rd ed. 1993))). "A court therefore should not dismiss a complaint so long as it sets out facts sufficient to support a reasonable inference that the plaintiff is entitled to *any* relief the court can grant, even if that relief is not specifically requested." *Int'l Fid. Ins. Co.*, 2011 WL 3055251, at *2 n. 1 (emphasis added) (citing *Bontkowski,* 305 F.3d at 762). "Any doubt on this score is dispelled by Rule 54(c), which provides that a prevailing party may obtain any relief to which he's entitled even if he has not demanded such relief in his pleadings." *Bontkowski,* 305 F.3d at 762 (quoting former Rule 54(c)); *see* Fed. R. Civ. P. 54(c) ("Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."). "Thus, the selection of an improper remedy in the . . . demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type." *Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.,* 635 F.3d

1106, 1108 (8th Cir. 2011) (quoting 5 Wright & Miller, *Fed. Prac. & Proc.*, Civil 3d § 1255 at 508–09 (3d ed. 2004)).

To state a claim under the First Amendment or the RLUIPA, a plaintiff must first demonstrate, as a threshold matter, that he has a sincerely held religious belief. *United States v. Seeger*, 380 U.S.163, 185 (1965). A plaintiff must next demonstrate both that there was a "substantial burden on a [his] right to practice his religion" and that the correctional officer's actions were a "conscious or intentional interference with the plaintiff's rights." *Wall v. Wade*, 741 F.3d 492, 498, 503 n.11 (4th Cir. 2014) (internal quotations omitted) (quoting *Lovelace v. Lee*, 472 F.3d 174, 198 n.8 (4th Cir. 2006)). A substantial burden is one which "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]" *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981).

But a correctional policy or practice that substantially burdens an inmate's First Amendment rights is still permissible if it is reasonably related to legitimate penological interests. *Lovelace*, 472 F.3d at 199. Whether a regulation is reasonably related to a legitimate penological interest depends a four-factor analysis: (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether the asserted interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates," which asks whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on the security of staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged

regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns." *Id.* at 200 (citing *Turner v. Safley*, 482 U.S. 78, 89–92 (1987)); *see Overton v. Bazzetta*, 539 U.S. 126, 132, (2003) (recognizing that the prisoner has the burden to disprove the validity of a prison regulation pursuant to the *Turner* analysis).

Wall alleges that he is a sincere adherent to the NOI religion and that he is not being a provided a diet consistent with his religious beliefs despite repeatedly advising officials that the VDOC's current common fare diet does not meet his religious dietary requirements. He also alleges that a diet that does meet his religious dietary requirements is already available and provided to other inmates in the VDOC. Finally, he alleges that the kosher diet was provided to him after he changed his religious affiliation within the VDOC. Accepting the allegations in the complaint as true and drawing all reasonable inferences in Wall's favor, the court concludes that he has stated plausible First Amendment and RLUIPA claims—even though some of the relief he specified is not available to him.

The Equal Protection Clause of the Fourteenth Amendment generally requires the government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439-41 (1985). It "does not take from the States all power of classification, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks and citations omitted). Thus, to prove an equal protection claim, an inmate "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination" on the basis of the plaintiff's membership in a protected class, such as race, gender, or religion. *Id.* (internal

quotation marks omitted). The plaintiff must next show that the policy is not reasonably related to legitimate penological interests. *Id.* at 732. This element requires the inmate to "allege facts sufficient to overcome the presumption of reasonableness applied to prison policies." *Id.* Once this showing is made, the burden shifts to a defendant to show the disparity is not an exaggerated response to a particular concern. *Morrison v. Garraghty*, 239 F.3d 648, 654-55 (4th Cir. 2001).

Wall alleges that Orthodox Jewish inmates are provided meals consistent with their religious beliefs but he and other NOI inmates are not. Wall claims that when he changed his religious affiliation within the VDOC, he was "immediately" approved for the kosher meal that conforms to his NOI beliefs. Accepting the allegations in the complaint as true and drawing all reasonable inferences in Wall's favor, the court concludes that he has stated a plausible equal protection claim—even though some of the relief he specified is not available to him.

## IV.

For the reasons stated, the court will deny the defendants' motion to dismiss.

The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 1st day of June, 2022.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE